# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JOHN OLIVEIRA,

Plaintiff,

v.

COUNTY OF MADERA, ET AL.,

Defendants.

_______________________________________/

Case No. 1:16-cv-01626-DAD-SKO

**ORDER DISMISSING PLAINTIFF'S COMPLAINT WITH 30 DAYS LEAVE TO AMEND**

(Doc. 1)

## I. INTRODUCTION

On October 28, 2016, Plaintiff John Oliveira ("Plaintiff") filed a complaint (the "Complaint") against Madera County ("the County"); District Attorney for the County of Madera David Linn ("Linn"); former District Attorney for the County of Madera Michael Kietz ("Kietz"); former Sheriff for the County of Madera John Anderson ("Anderson"); Deputy District Attorney for the County of Madera Nicolas Fogg ("Fogg"); and Detective for the Madera County Sheriff's Department Robert Blehm ("Blehm"). (Doc. 1.) Plaintiff is proceeding *in forma pauperis* and pro se. For the reasons set forth below, Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE and WITH LEAVE TO AMEND.

## II. FACTUAL ALLEGATIONS

On September 9, 2014, Plaintiff accepted a position as and was appointed Chief of Police for the Chukchansi Tribal Police Department of the Picayune Rancheria of Chukchansi Indians ("Tribal Police"). (Doc. 1 ("Compl.") ¶ 25.) During the course of this employment as Chief of Tribal Police, Plaintiff was asked by the Tribal Council to investigate certain events at the Chukchansi Gold Resort and Casino (the "Casino"). (*Id.* ¶ 27.) Specifically, the Tribal Council requested the Tribal Police to search for "an audit required by the National Indian Gaming Commission ("NIGC") for compliance with the Indian Gaming Regulatory Act." (*Id.*) The need to secure the audit was "urgent," as the NIGC had issued a "Temporary Closure Order" for the Casino if the audit was not received by October 27, 2014. (*Id.* ¶ 28.) The audit was being withheld by a "hostile faction" of the Tribe "who had previously taken over the [C]asino by force" and "occupied the offices of the Tribal Gaming Commission ("TGC")". (*Id.* ¶ 29.)

On or about October 3, 2014, Plaintiff requested and held a meeting with Defendant Kietz at the Madera County District Attorney's Offices. (*Id.* ¶ 31.) At that meeting, Plaintiff gave advance notice of the Tribal Police's intention to enter the TCG offices at the Casino in order to obtain a copy of the audit. (*Id.* ¶ 32.) Plaintiff also "revealed the plan of operation" to Defendant Kietz and provided him with copies of tribal resolutions of the Tribe and other documents supporting the operation. (*Id.*) One such document, Tribal Resolution 2014-79, "excluded Leonard Rosson and all employees of [private security company] Security Training Concepts ["STC"] from all Picayune Rancheria lands, including [the Casino]." (*Id.* ¶ 30.)

Also during the October 3, 2014 meeting, Plaintiff advised Defendant Kietz of the possibility that members of STC "may be detained or arrested due to their history of violence." (*Id.* ¶ 33.) Defendant Kietz "questioned whether the Tribal Police would have authority to arrest or have jurisdiction over non-Indian agents of STC." (*Id.*) On October 5, 2014, Plaintiff "provided [Defendant Kietz] via email . . . with legal authority recognizing the inherent authority of Tribal Police to detain and arrest non-Indians, more specifically, the arrest and detention of non-Indians" in California, which is covered by Public Law 83-280 (18 U.S.C. § 1162, 28 U.S.C. § 1360) ("Public Law 280".) (*Id.* ¶ 34.) According to Plaintiff, Public Law 280 "confer[s]

jurisdiction on certain states, to include the State of California, over most or all of Indian country within their borders . . . ." (*Id.* ¶ 14.)

On or about October 9, 2014, Plaintiff and nine (9) other members of the Tribal Police went into the Casino to obtain a copy of the audit and "were confronted by armed private security guards employed by the hostile faction and by . . . [STC]." (*Id.* ¶ 35.) Shortly after their arrival at the Casino, the Tribal Police "gathered and detained several of the STC security guards for release to the Madera County Sheriff's Department" upon the Sheriff's Department's arrival at the Casino. (*Id.* ¶ 36.)

At the scene, Defendant Anderson was provided a copy of Tribal Resolution 2014-79. (*Id.* ¶ 37.) Defendant Anderson "made no attempt to discount the authority of the Tribal Police nor did he make any attempt to obstruct [] Plaintiff/Tribal Police from carrying out his duties." (*Id.* ¶ 38.) "In fact, Defendant [] Anderson took the custody of the STC security guards for the hostile faction from the Tribal Police and removed them from inside the [C]asino." (*Id.*) "Unbeknownst to [] Plaintiff, Defendant [] Anderson promptly released the hostile STC security guards on the scene (outside the [C]asino), which resulted in the same STC security guards returning inside the [C]asino and assaulting several Tribal Police officers within five minutes of their release." (*Id.* ¶ 39.)

In the days following the October 9, 2014, incident, the Madera County Sheriff's Department along with the District Attorney's Office "initiated an investigation into whether [] Plaintiff and the nine sworn Tribal Police officers violated California state law in the performance of their duties." (*Id*. ¶ 40.) During the course of the investigation, Defendant Blehm made "an informal inquiry" with the Office of Justice Services of the Bureau of Indian Affairs, Plaintiff's former employer, "requesting any and all disciplinary information pertaining to [] Plaintiff." (*Id.* ¶¶ 20, 68.) In response to the request, the Chief of Internal Affairs for the Office of Justice Services of the Bureau of Indian Affairs wrote a letter to the Madera County Sheriff's Department that "disclosed inaccurate and false information about Plaintiff and certain alleged investigations by Internal Affairs Department of Plaintiff's conduct." (*Id.* ¶ 69.) On or about November 11, 2014, the Madera County Sheriff's department provided a copy of the letter to a local Fresno news

station "where the information was aired to the public during an evening newscast." (*Id.* ¶ 70.)

On October 31, 2014, Defendant Kietz "filed a criminal complaint against Plaintiff (and nine other Tribal Police officers) alleging 27 felony counts to include kidnapping, false imprisonment, assault with a firearm, and illegal use of a stun gun." (*Id.* ¶ 41.) According to Plaintiff, the criminal complaint "was filed only days prior to the local election in which Defendant Kietz was running for re-election as Madera County District Attorney" and was filed "in an attempt to increase his support from constituents." (*Id.* ¶¶ 47–48.) Plaintiff alleges that "[t]his suspicion was confirmed by Defendant [] Linn . . . who was quoted in the local newspaper as calling the criminal complaint filed by Defendant Kietz, as a political decision and not one in the interest of justice." (*Id.* ¶ 49.) According to Plaintiff, "[n]o specific wrong doing [sic] was alleged" in the Madera County Sheriff's Department's "one hundred forty-one (141) page crime report," and Plaintiff is listed only on two occasions, "both of which describe [] Plaintiff [] as doing nothing more than carrying a clipboard." (*Id.* ¶ 50.)

"An arrest warrant was issued for Plaintiff on or about October 31, 2014," and "[o]n or about November 9, 2014, Plaintiff turned himself into authorities and was placed in the Madera County jail until he posted bail." (*Id.* ¶¶ 51–52.) Plaintiff alleges that "[d]uring the initial appearance [] Plaintiff's bail was raised from $1,200,000 to $1,400,000 through the recommendation of [Defendant Fogg] despite [] Plaintiff's lack of involvement in the false allegations and [] Plaintiff's law abiding and honorable background as a former law enforcement officer and U.S. Army veteran." (*Id.* ¶ 111.) Plaintiff alleges that he suffered a loss of "over $100,000 required by a bonding company in order to post bail and be released from jail." (*Id.* ¶ 54.) According to Plaintiff, on or about November 19, 2015, "all charges listed in the criminal company were dismissed in favor of [] Plaintiff." (*Id.* ¶ 55.)

Based on these allegations, Plaintiff brings causes of action under 42 U.S.C. § 1983 alleging Fourth Amendment claims for malicious prosecution, and claims for "arrest without probable cause" and "false arrest." Plaintiff also alleges claims for "violation of privacy/unlawful disclosure," "failure to properly train," "violation of Eighth Amendment," as well as causes of action under the California Tort Claims Act alleging claims for negligent infliction of emotional

distress, intentional infliction of emotional distress, negligent interference with prospective economic relations, and intentional interference with prospective economic relations.

## III. SCREENING STANDARD

In cases where the plaintiff is proceeding *in forma pauperis*, the Court is required to screen each case, and shall dismiss the case at any time if the Court determines that the allegation of poverty is untrue, or the action or appeal is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). If the Court determines that the complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

The Court's screening of the Complaint under 28 U.S.C. § 1915(e)(2) is governed by the following standards. A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Plaintiff must allege a minimum factual and legal basis for each claim that is sufficient to give each defendant fair notice of what plaintiff's claims are and the grounds upon which they rest. *See, e.g., Brazil v. U.S. Dep't of the Navy*, 66 F.3d 193, 199 (9th Cir. 1995); *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

In determining whether a complaint states a claim on which relief may be granted, allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *See Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). Moreover, since plaintiff is appearing pro se, the Court must construe the allegations of the Complaint liberally and must afford plaintiff the benefit of any doubt. *See Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997)

(quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)).

Further, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (internal citations omitted).

## IV. DISCUSSION

### A. Plaintiff's Claims Under 42 U.S.C. § 1983 Shall Be Dismissed.

#### 1. Defendants Linn, Kietz, Anderson, Fogg, and Blehm Sued for Damages in Their Official Capacities Are Not "Persons" Under § 1983.

In pertinent part, 42 U.S.C. § 1983 provides that "[e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." (emphasis added).

Plaintiff's causes of action under § 1983 are brought against Defendants Linn, Kietz, Anderson, Fogg, and Blehm in their "official capacity." (Compl. ¶¶ 2–8.) "[S]tate officials sued in their official capacities . . . are not 'persons' within the meaning of § 1983 . . . ." *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In addition, "[t]he Eleventh Amendment bars actions for damages against state officials who are sued in their official capacities in federal court." *Dittman v. California*, 191 F.3d 1020, 1026 (9th Cir. 1999). By contrast, a state official sued in his official capacity for "prospective injunctive relief" *is* considered a "person" under § 1983, and the Eleventh

Amendment does not bar such claims. *See Flint*, 488 F.3d at 825.

Plaintiff seeks money damages against Defendants Linn, Kietz, Anderson, Fogg, and Blehm, not prospective injunctive relief.[1] (Compl. at 14 ("Prayer for Relief").) Plaintiff's § 1983 claims against Defendants Linn, Kietz, Anderson, Fogg, and Blehm in their official capacities are therefore not cognizable.

Plaintiff, however, alleges in his Complaint:

> Upon information and belief, all above-named Defendants, were acting within their official capacity and within the course and scope of their authority and employment at all relevant times herein (collectively the "Defendants"). If it turns out through discovery that these employee/defendants were not acting within their official capacities and/or not within the course and scope of their employment, Plaintiff will seek to amend or conform this complaint to the evidence.

(*Id.* ¶ 8.) Accordingly, the Court will grant Plaintiff leave to amend his complaint to attempt to state claims under § 1983 against the named individual defendants in their personal capacities. "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Liability in a personal-capacity suit can be demonstrated by showing that the official, acting under color of state law, caused the deprivation of a federal right. *See id.* at 166.

To the extent Plaintiff wishes to proceed with his malicious prosecution claim under § 1983 against the individual defendants in their personal capacities, a plaintiff must plead tortious conduct by the defendant under the elements of a state law malicious prosecution claim, as well as allege that the defendants acted under color of state law for the purpose of denying the plaintiff equal protection or another a specific constitutional right. *Poppell v. City of San Diego*, 149 F.3d 951, 961 (9th Cir. 1998); *see also Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) ("In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right."); *Usher v.*

---

[1] Plaintiff also seeks injunctive relief, but does so only against Defendant County of Madera. (*See* Compl. at 14 ("Prayer for Relief").)

*City of L.A.*, 828 F.2d 556, 562 (9th Cir. 1987) (a malicious prosecution claim is not generally cognizable federally if the state judicial system provides a remedy, but "an exception exists to the general rule when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights"). In addition, in order to prevail on a malicious prosecution claim under § 1983, the plaintiff must establish that the prior proceedings terminated in such a manner as to indicate his innocence, *and that charges were not withdrawn on the basis of a compromise among the parties*. *Awabdy*, 368 F. 3d at 1068 (emphasis added). *See also Sanders v. Matthew*, No. 15-CV-395 LJO-EPG, 2016 WL 7210115, at *4 (E.D. Cal. Dec. 12, 2016) (dismissing the plaintiff's malicious prosecution claim where the plaintiff pleaded *nolo contendere* to a misdemeanor charge, resulting in a felony charge being dismissed, because the allegations showed that the proceedings had not "terminated in such a manner as to indicate his innocence.").

Finally, state prosecutors are entitled to absolute prosecutorial immunity from claims under §1983 when they are acting pursuant to their official role as advocates for the state performing functions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Courts have held that the filing of a criminal complaint in state court is an activity protected by absolute prosecutorial immunity. *See, e.g.*, *Heinemann v. Satterberg*, 731 F.3d 914, 916 (9th Cir. 2013) (upholding district court's finding on summary judgment that the decision to file a criminal complaint against the defendant in state court was protected by absolute prosecutorial immunity.); *Geiche v. City & Cty. of San Francisco*, No. C 08–3233 JL, 2009 WL 1948830, at *4 (N.D. Cal. July 2, 2009) ("Here, named defendant Steger is alleged to have done (and in fact did) nothing more than sign the charging instrument against Plaintiff. Filing the criminal complaint was an essential part of instigating the criminal prosecution and such conduct is entitled to absolute immunity.") (citing *Demery v. Kupperman*, 735 F.2d 1139, 1144 (9th Cir. 1984); *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 679 (9th Cir.1984); *Freeman on Behalf of the Sanctuary v. Hittle*, 708 F.2d 442, 443 (9th Cir. 1983)).

//

**2. Plaintiff's § 1983 Claims Against Defendant County of Madera (Counts I–III), as well as His "Failure to Properly Train" Claim (Count IX), Are Insufficiently Pleaded.**

Under longstanding Supreme Court authority, a municipality cannot be held liable under § 1983 simply because it employs an individual accused of, or who has engaged in, illegal or unconstitutional conduct. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978) (holding that "[a] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"); *see also Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) ("[I]t is not enough [under *Monell* ] for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."). Because there is no respondeat superior liability under § 1983, counties and municipalities may be sued under § 1983 only upon a showing that an official policy or custom caused the constitutional tort. *See Monell*, 436 U.S. at 691. "A local government entity cannot be held liable under § 1983 unless the plaintiff alleges that the action inflicting injury flowed from either an explicitly adopted or a tacitly authorized [governmental] policy." *Ortez v. Washington Cty., State of Or.*, 88 F.3d 804, 811 (9th Cir. 1996) (citation and quotations omitted) (alteration in original). "[L]ocal governments, like any other § 1983 'person,' . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690–91. A local governmental entity may also "be liable if it had a policy or custom of failing to train its employees and that failure to train caused the constitutional violation." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 123 (1992). "In particular . . . the inadequate training of police officers could be characterized as the cause of the constitutional tort if—and only if—the failure to train amounted to 'deliberate indifference' to the rights of persons with whom the police come into contact." *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

Plaintiff's Complaint does not allege that a policy or custom existed to cause the alleged malicious prosecution (Count I), the "Arrest Without Probable Cause" (Count II), or the "False

Arrest" (Count III) by Madera County employees. Elsewhere in the Complaint, however, Plaintiff purports to bring a claim for "Failure to Properly Train" (Count IX), but does not identify the statutory or common law basis for this claim. In the absence of any specified legal basis, "Failure to Properly Train" is not a cognizable claim.

However, by alleging in Count IX that "Defendants failed to properly train sheriff's department and district attorney personnel in Public Law 280 resulting in negligent and criminal behavior" (Compl. ¶ 108), it appears that Plaintiff is attempting in Count IX to state a claim against Defendant County of Madera under § 1983 for municipal liability. Accordingly, the Court shall dismiss Plaintiff's § 1983 claims against Defendant County of Madera without prejudice and with leave to amend in order to afford Plaintiff an opportunity to attempt to state a claim under § 1983 against the County for injury caused by an official policy or custom.

**B. Plaintiff's Claim for "Violation of Privacy/Unlawful Disclosure" Is Subject to Dismissal (Count IV).**

Plaintiff purports to bring a claim for "Violation of Privacy/Unlawful Disclosure," alleging that the Madera County Sheriff's Department released his personnel records, which it received from Plaintiff's former employer the Office of Justice Services of the Bureau of Indian Affairs in response to Defendant Blehm's "informal inquiry," to a local news station that aired the information to the public during an evening newscast. (Compl. ¶¶ 68–70.) Plaintiff alleges further that "Defendants violated California state statutes by releasing such information and also had a duty of care to protect such information from disclosure." (*Id.* ¶ 72.)

Plaintiff, however, does not identify what "California state statutes" or allege facts describing the extent or the source of the "duty of care to protect such information from disclosure" that Defendants are alleged to have breached. "A complaint which lacks allegations of fact to show that a legal duty of care was owed is fatally defective."[2] *Crescent Woodworking Co., Ltd. v. Accent Furniture, Inc.*, No. EDCV 04–01318 DDP (PJWx), 2005 WL 5925586, at *4 (C.D. Cal. Dec. 6, 2005) (quoting *Hegyes v. Unjian Enter., Inc.*, 234 Cal. App. 3d 1103 (1991)). In

---

[2] It appears that Plaintiff is attempting in Count IV to allege a negligence claim under California law, the elements of which are: (1) the existence of a duty to exercise due care; (2) breach of that duty; (3) causation; and (4) damages. *See Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 500 (2001).

addition, Plaintiff does he specifically identify which "Defendants" engaged in the allegedly unlawful conduct. When multiple defendants are named, the plaintiff must allege the basis of his claims as to each defendant; it is improper to simply lump defendants together. *See Sebastian Brown Prods., LLC v. Muzooka, Inc.*, 143 F. Supp. 3d 1026, 1037 (N.D. Cal. 2015); *Flores v. EMC Mortg. Co*., 997 F. Supp. 2d 1088, 1103 (E.D. Cal. 2014). The Court will dismiss Count IV with leave to amend to identify the statutory basis for the claim and to allege specific facts sufficient to establish the elements of such claim as to each defendant.

**C. Plaintiff's Claims Under the California Tort Claims Act (Counts V–VIII) Shall Be Dismissed.**

Plaintiff's claims for negligent infliction of emotional distress (Count V), intentional infliction of emotional distress (Count VI), negligent interference with prospective economic relations (Count VII), and intentional interference with prospective economic relations (Count VIII) are all brought pursuant to the California Tort Claims Act, Cal. Govt. Code §§ 810–996.6. For the reasons set forth below, these claims shall be dismissed with leave to amend.

**1. There is No Cause of Action under California Law for Negligent Infliction of Emotional Distress (Count V).**

Plaintiff's claim for negligent infliction of emotional distress (Count V) is not cognizable because there is no independent tort of negligent infliction of emotional distress under California law. *See Morse v. Cty. of Merced*, No. 1:16-cv-00142-DAD-SKO, 2016 WL 3254034, at *12 (E.D. Cal. June 13, 2016) (citing *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992) ("We have repeatedly recognized that '[t]he negligent causing of emotional distress is not an independent tort, but the tort of negligence.'") (quoting *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989))). *See also Cramer v. Consol. Freightways, Inc.*, 209 F.3d 1122, 1133 (9th Cir. 2000) ("The tort of negligent infliction of emotional distress is simply a negligence claim alleging that the defendant breached a duty to protect the plaintiff's mental well-being."); *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993) ("[T]here is no independent tort of negligent infliction of emotional distress."). A negligence claim giving rise to emotional distress includes "at least two variants of the theory"—"bystander" cases and

"direct victim" cases. *Wooden v. Raveling*, 61 Cal. App. 4th 1035, 1037 (1998). "Direct victim" cases are cases in which the plaintiff's claim of emotional distress is not based upon witnessing an injury to someone else, but rather arises from the breach of a duty that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of the defendant's preexisting relationship with the plaintiff. *See id.* at 1038; *Burgess*, 2 Cal. 4th at 1073; *Marlene F.*, 48 Cal. 3d at 590. In "direct victim" cases, "well-settled principles of negligence are invoked to determine whether all elements of a cause of action, including duty, are present in a given case." *Burgess*, 2 Cal. 4th at 1073. "[U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and emotional distress is proximately caused by that breach of duty." *Potter*, 6 Cal. 4th at 985.

Plaintiff alleges he was directly—as opposed to indirectly—injured by the illegal activity of "Defendants." The Complaint alleges that Defendants negligently inflicted emotional distress because they "were negligent" and their "negligence was a substantial factor in causing Plaintiff's serious emotional distress." (Compl. ¶¶76, 78.) Insofar as these allegations reflect an attempt to fit the "direct victim" theory outlined above, they are wholly insufficient. At this time Plaintiff does not state a cause of action for negligence in Count V and accordingly this claim is dismissed without prejudice. Plaintiff is permitted to amend his complaint to attempt to state such a claim in accordance with the directives of this order, including alleging facts demonstrating compliance with the California Tort Claims Act, as set forth below.

**2. Plaintiff Has Not Stated Claims Under the Tort Claims Act (Counts VI–VIII).**

Like Count V, Counts VI–VIII purport to allege state law tort claims under the California Tort Claims Act against "Defendants." (Compl. ¶¶ 80–105.) Under the California Tort Claims Act, a plaintiff may not maintain an action for damages against a public entity or a public employee unless he timely files a notice of tort claim. Cal. Gov't Code §§ 905, 911.2, 945.4 & 950.2; *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995) ("The California Tort Claims Act requires, as a condition precedent to suit against a public entity, the timely presentation of a written claim and the rejection of the claim in whole or in part."). "Compliance

with the claims statutes is mandatory; and failure to file a claim is fatal to the cause of action." *City of San Jose v. Sup. Ct.*, 12 Cal. 3d 447, 454 (1974) (internal citations omitted). "Complaints that do not allege facts demonstrating either that a claim was timely presented or that compliance with the claims statute is excused are subject to [dismissal] for not stating facts sufficient to constitute a cause of action." *Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 209 (2007); *accord Mangold*, 67 F.3d at 1477.

Here, Plaintiff alleges that "[t]o the extent required by law, Plaintiff has exhausted any applicable administrative remedies for the claims asserted herein" (Compl. ¶ 42), but does not allege any facts in his complaint demonstrating that he has complied with the California Tort Claims Act by timely filing a notice of tort claim with the appropriate entities. Therefore, all of Plaintiff's state tort law causes of action under the California Tort Claims Act against Defendants shall be dismissed for failure to state a claim. *See Mangold*, 67 F.3d at 1477; *Shirk*, 42 Cal.4th at 209.

Further, under California law a public entity is not liable for a claim brought by a plaintiff unless liability is provided for by statute or required by the state or federal constitution. Cal. Gov. Code § 815*; Lundeen Coatings Corp. v. Dep't of Water & Power for the City of Los Angeles*, 232 Cal. App.3d 816, 832 (1991); *see also Munoz v. City of Union City*, 148 Cal. App. 4th 173, 182, (2007) ("'[D]irect tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care.'") (citations and quotations omitted). Therefore, in order to state a cause of action for government tort liability, "every fact essential to the existence of statutory liability must be plead[ed] with particularity, including the existence of a statutory duty." *Freitag v. City of San Diego Harbor Police*, No. 11–CV–2999–IEG (JMA), 2012 WL 160051, at *5 (S.D. Cal. Jan. 18, 2012) (citing *Zuniga v. Housing Auth.*, 41 Cal. App. 4th 82, 96 (1995) abrogated on other grounds by *Zelig v. Cnty. of Los Angeles*, 27 Cal. 4th 1112 (2002)). Plaintiff does not identify in his Complaint what statute or statutes establish the County of Madera's liability. Therefore, Plaintiff's state law claims against the County of Madera should also be dismissed on this basis.

//

Finally, Plaintiff is advised that California Government Code§ 821.6 provides prosecutorial immunity for public employees for "injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." *Id.* § 821.6. "California courts construe section 821.6 broadly in furtherance of its purpose to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits."[3] *Gillan v. City of San Marino*, 147 Cal. App. 4th 1033, 1048 (2007). Section 821.6 "immunizes not only the act of filing or prosecuting a judicial or administrative complaint, but also extends to actions taken in preparation for such formal proceedings." *Id.* (citing *Amylou R. v. County of Riverside*, 28 Cal. App. 4th 1205, 1209–10 (1994)).

A defendant is immune from liability pursuant to § 821.6 if: (1) he was an employee of the County; (2) Plaintiff's injuries were caused by acts committed by the defendant in instituting or prosecuting a judicial or administrative proceeding; and (3) the defendant's conduct while instituting or prosecuting the proceeding was within the scope of her employment. *Cameron v. Buether*, No. 09-CV-2498-IEG, 2010 WL 2635098, at *3 (S.D. Cal. June 29, 2010) (citing *Amylou R.*, 28 Cal. App. 4th 1205, 1209–10 (1994)). If these requirements are met, immunity attaches even if the defendant acted "maliciously and without probable cause." *See* Cal. Gov't Code § 821.6.

Accordingly, the Court dismisses Plaintiff's state law tort claims under the California Tort Claims Act, Counts VI–VIII, without prejudice and with leave to amend to attempt to state a claim pursuant to the above.

**D. Defendant Fogg Has Absolute Prosecutorial Immunity From Plaintiff's Claim for "Violation of Eighth Amendment (Excessive Bail)" (Count X).**

In his Complaint, Plaintiff alleges that "[d]uring the initial appearance [] Plaintiff's bail was raised from $1,200,000 to $1,400,000 through the recommendation of [Defendant Fogg] despite [] Plaintiff's lack of involvement in the false allegations and [] Plaintiff's law abiding and

[3] Immunity under Government Code section 821.6 is not limited to claims for malicious prosecution, but also extends to other causes of action arising from conduct protected under the statute, including intentional infliction of emotional distress. *See Kemmerer v. County of Fresno*, 200 Cal. App. 3d 1426, 1435–37 (1988).

honorable background as a former law enforcement officer and U.S. Army veteran." (*Id.* ¶ 111.)

Bail requests are part of a prosecutor's job as an advocate for the state, and Defendant Fogg, as a Deputy District Attorney, is therefore entitled to absolute prosecutorial immunity from Plaintiff's challenge to Defendant Fogg's bail "recommendation." *See Dillberg v. Cty. of Kitsap*, 76 F. App'x 792, 794 (9th Cir. 2003) (finding prosecutors "enjoy absolute immunity under § 1983 for recommending a bail amount of $500,000." (citing *Burns v. County of King*, 883 F.2d 819, 824 (9th Cir. 1989). *See also Cruz v. Kauai Cty.*, 279 F.3d 1064, 1067 n.3 (9th Cir. 2002) (prosecutor was entitled to absolute immunity for filing a bail revocation motion); *Franceschi v. Schwartz*, 57 F.3d 828, 830–31 (9th Cir. 1995) (affirming the Rule 12(b)(6) dismissal of section 1983 claim on the ground that absolute immunity extended to the issuance of a warrant and the setting of bail). Thus, Plaintiff's claim alleging violation of the Excessive Bail clause of the Eighth Amendment (Count X) is not cognizable against Defendant Fogg.[4]

**E. Plaintiff May File An Amended Complaint.**

Plaintiff's Complaint fails to state cognizable claims under 42 U.S.C. § 1983 and under state tort law against Defendants. However, "Rule 15(a) [of the Federal Rules of Civil Procedure] is very liberal and leave to amend 'shall be freely given when justice so requires.'" *AmerisourceBergen Corp. v. Dialysis West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (quoting former version of Fed. R. Civ. P. 15(a)). *See also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). As Plaintiff is proceeding pro se, he shall be given an opportunity to amend his claims to cure the identified deficiencies to the extent he can do so in good faith.

Plaintiff is advised that an amended complaint supersedes the original complaint. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc). The amended complaint must be "complete in itself without reference to the prior or superseded pleading." Rule 220 of the Local Rules of the United States District Court, Eastern District of California. Once Plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore,

[4] It appears that Defendant Fogg is the only defendant against whom Plaintiff brings his Eighth Amendment claim. (*See* Compl. ¶ 111.)

in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). If Plaintiff fails to file an amended complaint or fails to cure the deficiencies identified above, the Court will recommend that the complaint be dismissed with prejudice and without leave to amend.

## V. CONCLUSION AND ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE and WITH LEAVE TO AMEND;
2. Within 30 days from the date of service of this order, Plaintiff shall file a first amended complaint; and
3. If Plaintiff fails to file a first amended complaint in compliance with this order, this action will be recommended for dismissal for failure to state a claim upon which relief can be granted.

IT IS SO ORDERED.

Dated: **February 9, 2017**

/s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE