# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

JOHN OLIVEIRA,

           Plaintiff,

    v.

COUNTY OF MADERA, et al.,

           Defendants.

_____/

Case No. 1:16-cv-01626-DAD-SKO

**FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S FIRST AMENDED COMPLAINT BE DISMISSED WITHOUT LEAVE TO AMEND FOR FAILURE TO STATE A CLAIM**

(Doc. 5)

**OBJECTIONS DUE: 21 DAYS**


### I.  PROCEDURAL BACKGROUND

On October 28, 2016, Plaintiff John Oliveira ("Plaintiff"), proceeding pro se and *in forma pauperis*, filed a complaint against Madera County ("the County"); District Attorney for the County of Madera David Linn ("Linn"); former District Attorney for the County of Madera Michael Keitz ("Keitz"); former Sheriff for the County of Madera John Anderson ("Anderson"); Deputy District Attorney for the County of Madera Nicolas Fogg ("Fogg"); and Detective for the Madera County Sheriff's Department Robert Blehm ("Blehm").  (Doc. 1.)  On February 9, 2017, the undersigned found that Plaintiff's complaint failed to state cognizable claims under 42 U.S.C. § 1983 and under state tort law.  (Doc. 4.)  Plaintiff was provided with the applicable legal

standards so that he could determine if he would like to pursue his case, and was granted thirty (30) days leave to file an amended complaint curing the pleading deficiencies identified in the order. (*Id.*)  On March 9, 2017, Plaintiff filed an amended complaint against the County; Linn; Keitz; Anderson; Fogg; Blehm; the "Madera County District Attorney's Office"; and Tyson Pogue ("Pogue") (collectively "Defendants").  (Doc. 5 ("Am. Compl.").)

After screening Plaintiff's amended complaint, the Court finds that despite the explicit recitation of the deficiencies of Plaintiff's original complaint, Plaintiff has failed to state any cognizable federal claims.  Accordingly, the Court RECOMMENDS that Plaintiff's amended complaint be DISMISSED without leave to amend.

## II.       LEGAL STANDARD

In cases where the plaintiff is proceeding *in forma pauperis*, the Court is required to screen each case, and shall dismiss the case at any time if the Court determines that the allegation of poverty is untrue, or the action or appeal is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  If the Court determines that the amended complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

The Court's screening of the amended complaint under 28 U.S.C. § 1915(e)(2) is governed by the following standards.  A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  Plaintiff must allege a minimum factual and legal basis for each claim that is sufficient to give each defendant fair notice of what plaintiff's claims are and the grounds upon which they rest.  *See, e.g., Brazil v. U.S. Dep't of the Navy*, 66 F.3d 193, 199 (9th Cir. 1995); *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

In determining whether a complaint states a claim on which relief may be granted, allegations of material fact are taken as true and construed in the light most favorable to the plaintiff.  *See Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  Moreover, since

Plaintiff is appearing pro se, the Court must construe the allegations of the amended complaint liberally and must afford plaintiff the benefit of any doubt. *See Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)).

Further, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (internal citations omitted).

### III.    PLAINTIFF'S AMENDED COMPLAINT

This action is one of six cases[1] filed in in October–November 2016 in this Court arising out of an altercation that occurred at the Chukchansi Gold Resort and Casino (the "Casino") in Coarsegold, California and which resulted in Plaintiff's arrest and criminal prosecution.

### A.    Factual Allegations[2]

In August 2014, a "hostile faction" (the "Hostile Faction") of the Picayune Rancheria of Chukchansi Indians "took over" the Casino "by force." (Am. Compl. ¶ 27.) The Hostile Faction "took residence" in the Casino and hired a private security company, Security Training Concepts

---

[1] *See, e.g., Jones v. Keitz*, 1:16-cv-1725-LJO-EPG (E.D. Cal. Nov. 14, 2016); *Auchenbach v. County of Madera*, 1:16-cv-1645-DAD-SKO (E.D. Cal. Oct. 31, 2016); *Tofaute v. County of Madera*, 1:16-cv-1627-DAD-SKO (E.D. Cal. Oct. 28, 2016); *Anderson v. County of Madera*, 1:16-cv-1629-DAD-SKO (E.D. Cal. Oct. 28, 2016); *Rhodes v. County of Madera*, 1:16-cv-1631-DAD-SKO (E.D. Cal. Oct. 28, 2016).

[2] The following description assumes, for purposes of this screening only, the truth of the allegations of the amended complaint. *See Lopez v. Bank of Am.*, No. 1:11–cv–00485–LJO–SMS, 2011 WL 1134671, at *2 (E.D. Cal. Mar. 28, 2011) ("When screening a plaintiff's complaint, the Court must assume the truth of the factual allegations.").

("STC"), "to protect them against any attempts by the [Picayune Rancheria of Chukchansi Indians Tribal Council ("Tribal Council")] to retake the Casino." (*Id.* ¶ 28.)

### 1. The Incidents at the Butler Building in September 2014

On or about September 3, 2014, members of the Tribal Council entered the "Butler Building," a structure located on the Picayune Rancheria, "in order to secure the facility from trespass" by the Hostile Faction. (*Id.* ¶ 29.) The Madera County Sheriff's Department "threatened the Tribal Council that if they were to vacate the building at any time they would lose any control of the facility and the [Department] would prohibit any parties from entering the building." (*Id.* ¶ 30.) In order to comply with the Sheriff's Department's instruction, "Treasurer Vernon King volunteered to continuously occupy the Butler Building." (*Id.* ¶ 31.) Mr. King "planned to live and sleep in the Butler Building over several days." (*Id.*)

According to Plaintiff, Mr. King is a diabetic, and "Defendants were aware of [Mr.] King's medical condition." (*Id.* ¶ 32.) The Madera County Sherriff's Department "threatened Tribal Council [] members with arrest if they made any attempt to enter the building to provide relief to [Mr.] King." (*Id.* ¶ 30.) "Plaintiff advised [the Department] that such a threat was unlawful and [the Department] responded they would arrest them for disobeying a lawful order," and the Department "posted deputy sheriffs at the entrance to the Butler Building to prevent access by members of the Tribal Council." (*Id.* ¶¶ 30, 33.) Plaintiff and the Tribal Council "made several attempts to provide food to [Mr.] King, but was turned away by the [Madera County Sheriff's Department]." (*Id.* ¶ 34.)

Upon arriving at the Butler Building, Plaintiff contacted "Sgt. Weaver" of the Madera County Sheriff's Department regarding the refusal to allow food to Mr. King. (*Id.* ¶ 35.) Sgt. Weaver advised Plaintiff that orders from Defendant Pogue were to not allow Mr. King access to food. (*Id.*) After Plaintiff "advised Sgt. Weaver of the civil rights implications," Sgt. Weaver allowed food to be delivered to Mr. King. (*Id.* ¶ 36.) When Sgt. Weaver advised Defendant Pogue over the telephone of his decision to allow Mr. King access to food, Plaintiff overheard Defendant Pogue "chastising Sgt. Weaver for disobeying orders." (*Id.* ¶ 37.) According to Plaintiff, Defendant Pogue stated that Mr. King can "'fucking starve' or come out of that

building." (*Id.*)

On September 9, 2014, Plaintiff accepted a position as and was appointed Chief of Police for the Chukchansi Tribal Police Department of the Picayune Rancheria of Chukchansi Indians ("Tribal Police"). (*Id.* ¶ 25.) During the course of this employment as Chief of Tribal Police, Plaintiff was asked by the Tribal Council to investigate certain events at the Casino. (*Id.* ¶ 42.)

On or about September 19, 2014, the Tribal Council summoned Plaintiff to the Butler Building, where he made contact with Defendant Pogue. Defendant Pogue advised Plaintiff that the County "had decided the Butler Building is a part of the Casino and therefore the Tribal Council must vacate the building or risk arrest." (*Id.* ¶¶ 38–39.) Defendant Pogue thereafter ordered Tribal Council members "to move two concrete barriers being used for security purposes on the roadway underneath the highway separating the Casino from the Tribal Business Compound," as they were in his view "in violation of state vehicle code." (*Id.* ¶ 41.) Plaintiff advised Defendant Pogue that his requests were "outside the jurisdiction" of the County under "Public Law 280." (*Id.* ¶ 40–41.) According to Plaintiff, Public Law 280 "confer[s] jurisdiction on certain states, to include the State of California, over most or all of Indian country within their borders . . . ." (*Id.* ¶ 17.)

### 2. *The October 3, 2014, Meeting with Defendant Keitz and Allegations of Corruption Against Defendant Johnson*

On or about October 3, 2014, Plaintiff met with Defendant Keitz. (*Id.* ¶ 83.) At that meeting, Plaintiff gave advance notice of the Tribal Police's intention to enter the Casino for the purposes of searching for "an audit ('the Audit') required by the National Indian Gaming Commission ('NIGC') for compliance with the Indian Gaming Regulatory Act" and to "investigate allegations of corruption against [Defendant] Anderson." (*Id.* ¶¶ 42, 81.) According to Plaintiff, Defendant Keitz did not advise Plaintiff not to act. (*Id.* ¶ 65.) The meeting with Defendant Keitz was "followed up with an email, which referenced the subject of the meeting." (*Id.* ¶ 83.)

Plaintiff further alleges that, "[u]pon information and belief," Defendant Anderson "benefitted from his relationship with the Hostile Faction." (*Id.* ¶ 59.) According to Plaintiff, he

was "provided information regarding the acceptance of bribes" by Defendant Anderson, and Defendant Anderson was "made aware of the investigation into the alleged bribes being conducted by Plaintiff, thereby giving Defendant Anderson "motive to prosecute, defame, and discredit" Plaintiff. (*Id.* ¶ 84.)

### 3. The Incident at the Casino on October 9, 2014

During Plaintiff's employment as Chief of Tribal Police, the Tribal Council requested the Tribal Police to search for the Audit required by the NIGC for compliance with the Indian Gaming Regulatory Act. (*Id.* ¶ 42.) The NIGC had issued a "Temporary Closure Order" for the Casino if the audit was not received by October 27, 2014. (*Id.* ¶ 44.) The Tribal Council had made several requests for the Audit from the Hostile Faction, who "refused to relinquish it to the Tribal Council or the NIGC." (*Id.* ¶ 42.) According to Plaintiff, the Audit would subsequently reveal "over $49,000,000 in unaccounted funds . . . for which members of the Hostile Faction would be culpable." (*Id.* ¶ 42.)

On or about October 9, 2014, Plaintiff and nine (9) other members of the Tribal Police went into the Casino to obtain a copy of the Audit and "were confronted by armed STC security guards employed by the Hostile Faction." (*Id.* ¶ 45.) STC personnel "assaulted tribal officers with a Taser and refused to drop it after several verbal commands." (*Id.* ¶ 46.) The Tribal Police "detained several of the STC security guards for release to the [] County Sheriff's Department." (*Id.* ¶ 47.)

Tribal Resolution 2014-79, issued by the Tribal Council, requested the County Sheriff's Department to remove detained STC personnel from the Picayune Rancheria. (*Id.* ¶ 50.) On October 9, 2014, Defendant Anderson was provided a copy of Tribal Resolution 2014-79 at the scene, and was verbally requested by "the tribal attorney" and Tribal Council members "on at least six separate occasions" to remove the detained security guard from the Picayune Rancheria. (*Id.*) Plaintiff alleges that Defendant Anderson "refused to arrest the security guards or remove them from the Picayune Rancheria." (*Id.* ¶ 51.)

At some point thereafter, Defendant Anderson "took custody of the security guards for the Hostile Faction from the Tribal Police and removed them from the premises." (*Id.* ¶ 53.)

Defendant Anderson "recognized" Plaintiff as a Tribal Police Officer and "made no attempt[] to arrest or obstruct" Plaintiff from carrying out his "official duties." (*Id.* ¶ 54.) However, unbeknownst to Plaintiff, Defendant Anderson "promptly released security guards working for the Hostile Faction" outside the Casino, "which resulted in the security guards returning inside and assaulting several Tribal Police officers within five minutes of their release." (*Id.* ¶ 55.) After the "assault" on Tribal Officers by STC personnel, Defendants Anderson and Pogue arrived at the scene. (*Id.* ¶ 57.) Plaintiff alleges that Defendant Pogue "withdrew his firearm and assaulted Tribal Officer David Dixon without cause or provocation," and later "attempt[ed] to physically remove a firearm from Tribal Officer Tim Tofaute's holster as he walked by." (*Id.*)

Plaintiff alleges further that "[d]espite evidence indicating STC owner, Leonard Rossen, discharged his Taser at a Tribal Police [o]fficer," the County Sheriff's Department "refused to examine the evidence on the scene to include physical evidence of the discharge in the form of company manufactured identification markers identifying which particular Taser was discharged, a wound to the Tribal Officer's hand, or video evidence available to [the Department]." (*Id.* ¶ 56.) According to Plaintiff, "[v]ideo evidence also reveals Tribal Officers offering the [County Sheriff's Department] investigators an opportunity to inspect all the Tasers in possession of the Tribal Officers, as well as [] the wound to Tribal Officer Tim Tofaute's hand, but [the] investigators refused." (*Id.*)

According to Plaintiff, "[u]ntil the arrival of [the County Sheriff's Department] on the scene, no patrons of the Casino were placed at risk, nor was there any interference with gaming or other business operations." (*Id.* ¶ 48.) Plaintiff alleges that "[v]ideo evidence shows patrons gambling, shopping, and checking into the hotel well over an hour after the Tribal Police secured STC personnel and the scene," and also shows "the evacuation of the Casino was solely [due to] the actions of the [Sheriff's Department] and [the] Hostile Faction." (*Id.*)

Plaintiff alleges that, "[u]pon information and belief, the [County Sheriff's Department] relayed false information and misrepresented facts regarding events of October 9, 2014, to the California State Attorney General's Office in order to justify a restraining order against Plaintiff." (*Id.* ¶ 49.)

### 4. The Investigation and Criminal Complaint Filed October 31, 2014

During the course of his investigation of the October 9, 2014, incident at the Casino, Defendant Blehm contacted the Bureau of Indian Affairs, Plaintiff's former employer, requesting information about Plaintiff and his prior employment. (*Id.* ¶¶ 23, 120.) In response to the request, the Bureau of Indian Affairs wrote a "[d]efamatory [l]etter," which "contained a great deal of confidential, sensitive, and protected information concerning Plaintiff." (*Id.* ¶ 121.) Plaintiff alleges that the County Sheriff's Department "released, or caused to be released" the letter to a local Fresno news station "who broadcast the letter and its contents to the public." (*Id.* ¶ 122.) Plaintiff alleges that Defendant Blehm "mischaracterized" Plaintiff and Tribal Police officers as "thugs," and "failed to disclose that [] Plaintiff was acting under the authority of the Tribal Council, tribal law, Resolution by the Tribal Council, and federal law." (*Id.* ¶ 124.) According to Plaintiff, "[u]pon information and belief," the County officials "recognized or were aware of the legitimacy of the authority of the Tribal Council that employed the Plaintiff," as the County "accepted" $500,000 from the Tribal Council in April 2014 that was "publicized in the media." (*Id.* ¶ 89.)

On October 31, 2014, Defendant Keitz "filed a criminal complaint against Plaintiff, and the other Tribal Police officers, alleging 27 felony counts to include kidnapping, false imprisonment, assault with a firearm, and illegal use of a stun gun." (*Id.* ¶ 61.) Shortly thereafter, Plaintiff was arrested and required to post bail, which was set at $1,400,000. (*Id.* ¶ 62.) According to Plaintiff, Defendants knew that Plaintiff did not possess a firearm or Taser, and that neither Plaintiff nor any other Tribal Police officer discharged a Taser. (*Id.* ¶ 64.) Plaintiff alleges that there was no kidnapping; instead Plaintiff "lawfully and under tribal authority detained the security guards hired by the Hostile Faction and turned them over" to Defendant Anderson and his deputies. (*Id.*)

Ultimately, the criminal action was dismissed by Defendant Linn, who "opined on the record that the actions lacked merit." (*Id.* ¶ 63.) Specifically, Plaintiff alleges that Defendant Linn "stated to the court on the record that the charges were dismissed for insufficient evidence," and "stated to the media that Defendants' filing of criminal charges 'wreaked of politics.'" (*Id.* ¶¶ 82, 86.) Plaintiff alleges further that Defendant Keitz "filed an inaccurate and false complaint

against the Plaintiff three days before election day," and, upon filing charges, "held a press conference to gain publicity and increase his potential votes." (*Id.* ¶ 85.)

**B.      Claims Asserted**

Based on these allegations, Plaintiff attempts to state the following claims:

1.    Fourth and Fourteenth Amendment violations under 42 U.S.C. § 1983 ("Section 1983") against all Defendants ("First Cause of Action," Am. Comp. ¶¶ 67–78);

2.    Malicious Prosecution under Section 1983 against Defendants Madera County, Linn, Anderson, Keitz, Fogg, and Blehm ("Second Cause of Action," Am. Compl. ¶¶ 79–94);

3.    "Arrest Without Probable Cause" under Section 1983 against Defendants Anderson, Keitz, Fogg, and Blehm ("Third Cause of Action," Am. Compl. ¶¶ 95–99);

4.    "False Arrest" under Section 1983 against Defendants Keitz, Fogg, Anderson, and Blehm ("Fourth Cause of Action," Am. Compl. ¶¶ 100–107);

5.    "Failure to Properly Train" under Section 1983 against Defendants Anderson, Keitz, and Madera County ("Fifth Cause of Action," Am. Compl. ¶¶ 108–118);

6.    "Violation of Privacy/Unlawful Disclosure/Defamation" against Defendants Blehm, Madera County, and Anderson ("Sixth Cause of Action," Am. Compl. ¶¶ 119–130);

7.    "Intentional/Negligent Infliction of Emotional Distress" against Defendants Keitz, Fogg, Anderson, and Blehm ("Seventh Cause of Action," Am. Compl. ¶¶ 131–136);

8.    "Interference with Economic Relations" against Defendants Madera County, Keitz, Linn, Anderson, Fogg, and Blehm ("Eighth Cause of Action," Am. Compl. ¶¶ 137–138);

9.    Negligence against all Defendants ("Ninth Cause of Action," Am. Compl. ¶¶ 139–144); and

10.   "Injunctive Relief" ("Tenth Cause of Action," Am. Compl. ¶¶ 145–148)

## IV.      DISCUSSION

**A.      42 U.S.C. § 1983: Malicious Prosecution**

To state a claim under § 1983, plaintiff must allege that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Jensen v. City of Oxnard*, 145 F.3d 1078, 1082 (9th Cir. 1998). To prevail on a § 1983 claim of malicious prosecution, a plaintiff "must show that the defendants prosecuted [him] with malice

and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004). *See also Usher v. City of L.A.*, 828 F.2d 556, 562 (9th Cir. 1987) (a malicious prosecution claim is not generally cognizable federally if the state judicial system provides a remedy, but "an exception exists to the general rule when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights").

### 1. Defendant Keitz

Like the original complaint, Plaintiff's amended complaint references malicious prosecution but fails to raise any valid malicious prosecution claim under Section 1983. As previously stated in the February 9, 2017, screening order, state prosecutors are entitled to absolute prosecutorial immunity from claims under §1983 when they are acting pursuant to their official role as advocates for the state performing functions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). *See also Gobel v. Maricopa Cty.*, 867 F.2d 1201, 1203 (9th Cir. 1989).

"In determining whether absolute immunity is available for particular actions, the courts engage in a 'functional' analysis of each alleged activity." *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3rd Cir. 1992). In *Schlegel v. Bebout*, 841 F.2d 937, 943-44 (9th Cir. 1988), the Ninth Circuit provided guidance to determine the scope of prosecutorial immunity:

> Our inquiry must center on the nature of the official conduct challenged, and not the status or title of the officer. As a result, we must examine the particular prosecutorial conduct of which [plaintiff] complains. If we determine that the conduct is within the scope of [defendants'] authority and is quasi-judicial in nature, our inquiry ceases since the conduct would fall within the sphere of absolute immunity.

> To determine whether conduct of a state official is within his or her authority, the proper test is not whether the act performed was manifestly or palpably beyond his or her authority, but rather whether it is more or less connected with the general matters committed to his or her control or supervision . . .

> Absolute immunity depends on the function the officials are performing when taking the actions that provoked the lawsuit. We must look to the nature of the activity and determine whether it is "intimately associated

10

with the judicial phase of the criminal process." . . . . Investigative or administrative functions carried out pursuant to the preparation of a prosecutor's case are also accorded absolute immunity.

(emphasis in original; citations omitted.)  The classification of the challenged acts, not the motivation underlying them, determines whether absolute immunity applies. *Ashelman v. Pope*, 793 F.2d 1072 (9th Cir. 1986) (en banc).

Prosecutors and other eligible government personnel are absolutely immune from § 1983 liability in connection with challenged activities related to the initiation and presentation of criminal prosecutions. *Imbler*, 424 U.S. at 430–31; *see also Kalina v. Fletcher*, 522 U.S. 118 (1997); *Roe v. City of S.F.*, 109 F.3d 578, 583 (9th Cir. 1997); *Gobel*, 867 F.2d at 1203.  Courts have held that the filing of a criminal complaint in state court is an activity protected by absolute prosecutorial immunity. *See, e.g., Heinemann v. Satterberg*, 731 F.3d 914, 916 (9th Cir. 2013) (upholding district court's finding on summary judgment that the decision to file a criminal complaint against the defendant in state court was protected by absolute prosecutorial immunity.); *Geiche v. City & Cty. of San Francisco*, No. C 08–3233 JL, 2009 WL 1948830, at *4 (N.D. Cal. July 2, 2009) ("Here, named defendant Steger is alleged to have done (and in fact did) nothing more than sign the charging instrument against Plaintiff.  Filing the criminal complaint was an essential part of instigating the criminal prosecution and such conduct is entitled to absolute immunity.") (citing *Demery v. Kupperman*, 735 F.2d 1139, 1144 (9th Cir. 1984); *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 679 (9th Cir. 1984); *Freeman on Behalf of the Sanctuary v. Hittle*, 708 F.2d 442, 443 (9th Cir. 1983)).

"[A]bsolute prosecutorial immunity attaches to the actions of a prosecutor if those actions were performed as part of the prosecutor's preparation of his case, even if they can be characterized as 'investigative' or 'administrative.'" *Demery v. Kupperman*, 735 F.2d 1139, 1143 (9th Cir. 1984), *cert. denied*, 469 U.S. 1127 (1985).  A prosecutor is absolutely immune when making a decision to initiate a prosecution "even where he acts without a good faith belief that any wrongdoing has occurred." *Kulwicki*, 969 F.2d at 1463–64.  Immunity extends to "the preparation necessary to present a case," including "obtaining, reviewing, and evaluation of evidence." *Id.* at 1465 (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1414 (3rd Cir. 1991)).

Absolute prosecutorial immunity applies even if it leaves "the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Imbler*, 424 U.S. at 427. Even charges of malicious prosecution, falsification of evidence, coercion of perjured testimony and concealment of exculpatory evidence will be dismissed on grounds of prosecutorial immunity. *See Stevens v. Rifkin*, 608 F. Supp. 710, 728 (N.D. Cal. 1984). Further activities intimately connected with the judicial phase of the criminal process include making statements that are alleged misrepresentations and mischaracterizations during hearings and discovery and in court papers, *see Fry v. Melaragno*, 939 F.2d 832,837–38 (9th Cir. 1991), and conferring with witnesses and allegedly inducing them to testify falsely, *see Demery*, 735 F.2d at 1144.

Plaintiff's amended complaint alleges that Defendant Keitz met with Plaintiff before the altercation at the Casino and that Defendant Keitz "did not advise [the Tribal Police] not to act." (Am. Compl. ¶ 65.) The amended complaint then, without any supporting factual detail, concludes that Defendant Keitz "filed an inaccurate and false complaint against [] Plaintiff three days before election day." (*Id.* ¶ 85.) This allegation is conclusory and therefore not entitled to any weight. *Iqbal*, 556 U.S. at 681 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The bare factual allegation that Defendant Keitz met with Plaintiff and "did not advise [the Tribal Police] not to act" is insufficient to allege that Defendant Keitz was not acting in his official capacity in initiating his prosecution of Plaintiff. The amended complaint does not allege that Defendant Keitz was acting outside his authority and therefore he is entitled to absolute prosecutorial immunity. *Imbler*, 424 U.S. at 430–31. As such, Plaintiff's § 1983 claim against Defendant Keitz is barred. *See, e.g., Jones v. Keitz*, No. 1:16-cv-01725-LJO-EPG, 2017 WL 1375230, at *4 (E.D. Cal. Apr. 17, 2017) (dismissing similar § 1983 claim against Defendant Keitz as barred by absolute prosecutorial immunity).

### 2. *Defendants Anderson, Linn, Blehm and Fogg*

The Ninth Circuit has long recognized that "[f]iling a criminal complaint immunizes investigating officers . . . from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable

cause for an accused's arrest exists at that time." *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981) ("*Smiddy I*"), *overruled on other grounds by Beck v. City of Upland*, 527 F.3d 853, 865 (9th Cir. 2008). However, "[t]he presumption can be overcome, for example, by evidence that the officers knowingly submitted false information or pressured the prosecutor to act contrary to her independent judgment." *Smiddy v. Varney*, 803 F.2d 1469, 1471 (9th Cir. 1986), *opinion modified on denial of reh'g*, 811 F.2d 504 (9th Cir. 1987) ("*Smiddy II*"); *see also Borunda v. Richmond*, 885 F.2d 1384, 1390 (9th Cir. 1988) (evidence that police officers provided prosecutor with only a police report containing "striking omissions" indicated that the officers "procured the filing of the criminal complaint by making misrepresentations to the prosecuting attorney" and was sufficient to overcome the presumption). In contrast, the Ninth Circuit has clarified that a plaintiff's account of the incident in question, by itself, does not overcome the presumption of independent judgment. *Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir. 1994). When a plaintiff pleads no facts to rebut the presumption of prosecutorial independence, dismissal is appropriate. *Smiddy II*, 803 F.2d at 1471.

In the amended complaint, Plaintiff alleges Defendant Anderson "was made aware of the investigation into the alleged bribes being conducted by Plaintiff," and "had motive to prosecute, defame, and discredit Plaintiff." (Am. Compl. ¶ 84.) This vague insinuation falls far short of alleging that Defendants Anderson, Linn, Blehm, and/or Fogg pressured the prosecutor to press charges, supplied false information to the prosecutor, withheld relevant information from the prosecutor, or otherwise persuaded the prosecutor to act contrary to his independent judgment.[3]

---

[3] Indeed, the amended complaint makes no specific allegations about Defendants Blehm, Linn, or Fogg related to the false arrest or malicious prosecution allegations at all. The only factual allegation in the amended complaint about Defendant Blehm is related to the sixth cause of action, which alleges that he "investigated the events of October 9, 2014 for [the County]" and "contacted the Bureau of Indian Affairs requesting information about Plaintiff and his prior employment." (Am. Compl. ¶ 120.) At most, these few allegations suggest that Defendant Blehm was part of the team investigating the incident and that he should have concluded based on his investigation that Plaintiff had not acted unlawfully.

The allegations against Defendants Linn and Fogg are even more scant. The only factual allegation in the amended complaint about Defendant Linn "stated to the court on the record that the charges were dismissed for insufficient evidence," and he "stated to the media that Defendants' filing of criminal charges 'wreaked of politics.'" (Am. Compl. ¶¶ 82, 86.) Defendant Fogg allegedly stated, upon dismissal of the criminal charges against Plaintiff, that "their intent was to 'make an example' of [] Plaintiff.'" (*Id.* ¶ 82.)

*Smiddy II*, 803 F.2d at 1471. In short, Plaintiff has alleged no facts in the amended complaint that, if true, would rebut the *Smiddy* presumption of prosecutorial independence. Therefore, Plaintiff does not—and cannot—state a claim under § 1983 based on malicious prosecution against Defendants Anderson, Linn, Blehm, or Fogg. *See, e.g., Jones v. Keitz*, No. 1:16-cv-01725-LJO-EPG, 2017 WL 3394121, at *5 (E.D. Cal. Aug. 8, 2017) (dismissing similar malicious prosecution claims against Defendants Anderson and Blehm).

## B.     42 U.S.C. § 1983: False Arrest and "Arrest Without Probable Cause"[4]

Plaintiff also alleges that Defendants violated his constitutional rights under the Fourth Amendment by arresting him. (Am. Compl. ¶¶ 69, 80–81.) Where an arrest occurs after the filing of criminal charges, as Plaintiff alleges here (*see* Am. Compl. ¶¶ 61–62), the arrest necessarily took place pursuant to legal process and therefore was not a "false" arrest. *See Wallace v. Kato*, 549 U.S. 384, 389 (2007). As this Court explained in *Miller v. Schmitz*, No. 1:12-CV-00137-LJO, 2012 WL 1609193, at *4–5 (E.D. Cal. May 8, 2012):

> Plaintiff alleges that he was placed under arrest only after a criminal complaint and a warrant were issued for his arrest. In other words, Plaintiff alleges that his arrest was the result of legal process. Under such circumstances, there can be no claim for false arrest; false arrest consists of an arrest made in the absence of legal process. *Wallace v. Kato*, 549 U.S. 384, 389 (2007); *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1204–06 (9th Cir. 2003). Where, as here, the arrest is made after legal process has been initiated, any challenge to the arrest is subsumed by a claim for malicious prosecution. As the Supreme Court explained:
>
> > Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process-when, for example, he is bound over by a magistrate or arraigned on charges. Thereafter, unlawful detention forms part of the damages for the entirely distinct tort of malicious prosecution, which remedies detention

---

These allegations are insufficient to suggest, as they must, that Defendants Blehm's, Linn's, or Fogg's actions overcame Defendant Keitz's independent judgment. *Smiddy II*, 803 F.2d at 1471.

[4] As Plaintiff's § 1983 claims for "false arrest" and "arrest without probable cause" can legally be understood as raising the same claim—false arrest without probable cause—they will be analyzed together. *See Stilwell v. Clark Cty.*, No. 2:11-cv-01549-RFB-VCF, 2016 WL 4033959, at *4 (D. Nev. July 26, 2016) (analyzing claims under the Fourth Amendment for "false arrest" and "citation without probable cause" under the false arrest inquiry). *Cf. Jackson v. Puebla*, No. CV 12–6370–TJH (RNB), 2012 WL 5964575, at *5 (C.D. Cal. Oct. 17, 2012) ("Plaintiff's false arrest claim is properly analyzed under the Fourth Amendment, which accords the right to protection from arrest without probable cause."); *McDougald v. Ramar*, No. CIV F 08-238 AWI DLB, 2008 WL 2489889, at *3 (E.D. Cal. June 18, 2008) (referring to a false arrest claim under Section 1983 as an "arrest without probable cause" claim).

accompanied, not by absence of legal process, but by wrongful institution of legal process. If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself.

*Wallace*, 549 U.S. at 389-90 (internal quotation marks and citations omitted). *Accord Beck v. City of Upland*, 527 F.3d 853, 861 n.7 (9th Cir. 2008) (noting that the claim for "false arrest" was actually a claim for malicious prosecution because the plaintiff was arrested only after the prosecutor had filed a criminal complaint against the plaintiff); *Wilkins v. DeReyes*, 528 F.3d 790, 798-99 (10th Cir. 2008) (construing the plaintiff's challenge to detention pursuant to an arrest warrant as a claim for malicious prosecution and not false arrest).

Because the arrest alleged in the amended complaint took place pursuant to legal process (*i.e.* the October 31, 2014, filing of the criminal complaint by Defendant Keitz), Plaintiff's § 1983 claim predicated on false arrest in violation of the Fourth Amendment is "subsumed by a claim for malicious prosecution." *Miller*, 2012 WL 1609193, at *4 (E.D. Cal. May 8, 2012) (citing *Wallace*, 549 U.S. at 389-90). Because Plaintiff has previously been granted an opportunity to amend his complaint and further amendment would be futile, it is recommended that Plaintiff's claim be dismissed without leave to amend. *See Jones*, 2017 WL 3394121, at *4 (dismissing similar false arrest claims on grounds that they are "subsumed" by claims for malicious prosecution).

## C.     42 U.S.C. § 1983: *Monell* and Supervisor Liability for "Failure to Train"[5]

Under longstanding Supreme Court authority, a municipality cannot be held liable under § 1983 simply because it employs an individual accused of, or who has engaged in, illegal or unconstitutional conduct. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978) (holding that "[a] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"); *see also Bd.*

---

[5] Plaintiff purports to bring § 1983 claims against the "Madera County District Attorney's Office" and the" Madera County Sheriff's Department." (*See* Am. Compl., Second Cause of Action.) Under § 1983, "persons" includes municipalities. It does not include municipal departments. *Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 995–96 (N.D.Cal.1996). Because the Sheriff's Department and the District Attorney's Office are each subdivisions of a local government entity (in this case the County of Madera), they are not proper defendants for purposes of Plaintiff's § 1983 claims. *See Vega v. Cnty. of Yolo, Nelson v. Cty. of Sacramento*, 926 F. Supp. 2d 1159, 1170 (E.D. Cal. 2013). The Court will therefore consider Plaintiff's § 1983 claims alleged against these entities as alleged against the County.

*of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) ("[I]t is not enough [under *Monell* ] for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."). Because there is no *respondeat superior* liability under § 1983, counties and municipalities may be sued under § 1983 only upon a showing that an official policy or custom caused the constitutional tort. *See Monell*, 436 U.S. at 691. "A local government entity cannot be held liable under § 1983 unless the plaintiff alleges that the action inflicting injury flowed from either an explicitly adopted or a tacitly authorized [governmental] policy." *Ortez v. Washington Cty., State of Or.,* 88 F.3d 804, 811 (9th Cir. 1996) (citation and quotations omitted) (alteration in original). "[L]ocal governments, like any other § 1983 'person,' . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690–91. A local governmental entity may also "be liable if it had a policy or custom of failing to train its employees and that failure to train caused the constitutional violation." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 123 (1992). "In particular . . . the inadequate training of police officers could be characterized as the cause of the constitutional tort if—and only if—the failure to train amounted to 'deliberate indifference' to the rights of persons with whom the police come into contact." *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

"A supervisor can be liable [under § 1983] in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). "[A]cquiescence or culpable indifference" may suffice to show that a supervisor "personally played a role in the alleged constitutional violations." *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005). Where the applicable constitutional standard is deliberate indifference, "a plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in

unconstitutional conduct by his or her subordinates." *Starr*, 652 F.3d at 1207.

The amended complaint alleges that "it was the policy and/or custom of the County of Madera to inadequately and improperly train sheriff's department and district attorney's office personnel regarding the concurrent jurisdiction between the tribe and county as mandated or required by federal law"; that Defendants "as a matter of custom, practice and policy, failed to maintain adequate and proper training as to jurisdiction, tribal sovereignty and Public Law 280; and to prevent the consistent and systematic violation of civil rights against Native Americans"; and that Defendants "failed to provide adequate training to deputies on the proper law, protocol and procedure regarding the sovereign authority of tribes, detention and arrest of non-Indians and Indians, and criminal and civil jurisdiction under Public Law 280." (Am. Compl. ¶¶ 74, 111–12.) The allegation of a cognizable claim "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555–56. No factual allegations in Plaintiff's amended complaint support the conclusory allegation that the County failed to train its personnel, nor are there any factual allegations that the individual Defendants failed to train their subordinates, or acquiesced in such unconstitutional conduct by others. A conclusory allegation regarding the existence of a policy or custom or the lack of training unsupported by factual allegations is insufficient to state a *Monell* claim. *See Save CCSF Coalition v. Lim*, No. 14–cv–05286–SI, 2015 WL 3409260, at *13 (N.D. Cal. May 27, 2015) (unspecific allegation regarding municipal defendant's use of force policy insufficient to identify a relevant policy or custom under *Monell*); *Telles v. City of Waterford*, No. 1:10–cv–00982–AWI–SKO, 2010 WL 5314360, at *4 (E.D. Cal. Dec. 20, 2010) (to sufficiently state a claim under *Monell*, a plaintiff must allege facts establishing a policy or establishing a lack of training; it is not enough simply to state that there is a policy or allege a lack of training or supervision); *Jenkins v. Humboldt Cty.*, H.C.C.F., No. C 09-5899 PJH, 2010 WL 1267113, at *3 (N.D. Cal. Mar. 29, 2010) (same); *Smith v. Cty. of Stanislaus*, No. 1:11–cv–01655–LJO–SKO, 2012 WL 253241, at *3 (E.D. Cal. Jan. 26, 2012) (same). These generic allegations are therefore insufficient to sustain a claim against Defendants under *Monell*.

"A municipality's culpability for deprivation of rights is at its most tenuous where the

claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To prove deliberate indifference, a complaint must prove that a municipal actor disregarded a known or obvious consequence of his or her actions. *Bryan Cty.*, 520 U.S. at 410. When municipal policymakers are on actual or constructive notice that an omission in their training program causes employees to violate citizens' constitutional rights, the municipality is deliberately indifferent if it fails to act to correct the omission. *Id.* Failure to act in light of notice that its training program results in constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." *Canton*, 489 U.S. at 395.

The standard is an exacting one. Applying a less demanding standard in failure-to-train cases would circumvent the rule against *respondeat superior* liability of municipalities. *Id.* at 392. "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials." *Penbauer v. City of Cincinnati*, 475 U.S. 469, 483 (1986). To state a cognizable claim, a plaintiff must allege specific facts supporting the conclusion that the municipal entity had actual or constructive notice that their training program (or lack thereof) resulted in their employees' violating citizens' federal constitutional rights and that the municipality made a deliberate choice to train (or not to train) its employees as a deliberate decision drawn from its consideration of various alternatives.

In the face of these very stringent requirements, Plaintiff's amended complaint alleges nothing more than a completely unsupported legal conclusion that the County adopted a policy or practice of inadequately training its County Sheriff's Department and District Attorney's office personnel and that the individual Defendants failed to train those personnel. Plaintiff has not alleged any facts explaining, for example, how the County's policy or custom was deficient, how it caused the alleged harm, how the infirmity of the custom or policy was so obvious that policymakers were on notice that the constitutional injury was likely to occur, and how the individual Defendants participated in that constitutional injury. *See Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1157 n.8 (9th Cir. 2014); *Starr*, 652 F.3d at 1207–08, 1216–17.

//

18

Moreover, Plaintiff's amended complaint fails to allege sufficient facts to support a finding that Defendants were deliberately indifferent because it does not allege any prior similar incidents. *See Connick*, 563 U.S. at 63–64. "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train,' though there exists a 'narrow range of circumstances [in which] a pattern of similar violations might not be necessary to show deliberate indifference.'" *Flores*, 758 F.3d at 1159 (quoting *Connick*, 563 U.S. at 62–63). In this "narrow range of circumstances," a single incident may suffice to establish deliberate indifference where the violation of constitutional rights is a "highly predictable consequence" of a failure to train because that failure to train is "so patently obvious." *Connick*, 563 U.S. at 63–64 (discussing *Canton*, 489 U.S. 378). In *Connick*, the Court concluded that failure to train liability could not be imposed upon a district attorney's office based upon a single Brady violation, concluding that "[t]hat sort of nuance [in training] simply cannot support an inference of deliberate indifference." *Id.* at 67. Here, Plaintiff has not alleged facts showing a pre-existing pattern of constitutional violations stemming from the alleged failure to train officers regarding concurrent jurisdiction. Plaintiff also has not alleged that the unconstitutional consequences of failing to train officers in concurrent jurisdiction were "patently obvious" such that liability could be predicated.

Finally, Plaintiff does not make *any* connection between the failure to train County personnel regarding concurrent jurisdiction and the resulting alleged malicious prosecution–nor could he. Plaintiff's arrests by the County Sheriff's Department took place *after* Plaintiff was criminally charged by the prosecutor. As explained above, it is "presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exist[ed] at that time," *Smiddy I*, 665 F.2d at 266, and Plaintiff has not alleged any facts sufficient to rebut this presumption. Therefore, whether the County and/or the individual Defendants failed to train their officers regarding concurrent jurisdiction in tribal territory is "irrelevant to the arrests that took place after the filing of criminal charges by the state." *Jones*, 2017 WL 1375230, at *6. The investigation and subsequent filing of criminal charges by the prosecutor broke the causal chain between any policy or custom of the County and the allegedly

unconstitutional prosecution. *Smiddy I*, 665 F.2d at 266. Plaintiff's vague allegations regarding statements that the criminal complaint was intended to "make an example" of Plaintiff and "wreaked of politics" do nothing to explain how the County's and the individual Defendants' alleged failure to train its personnel regarding concurrent jurisdiction caused Plaintiff's injuries. *See Jones*, 2017 WL 1375230, at *6.

As set forth above, a conclusory pleading, unsupported by factual allegations is insufficient to state a claim. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Since this claim is not cognizable, it is recommended that the Court dismiss it. *See Forte v. Hughes*, No. 1:13-CV-01980-LJO-SMS, 2014 WL 2930834, at *13 (E.D. Cal. June 27, 2014).

## D.    42 U.S.C. § 1983: Violation of the Fourteenth Amendment

Plaintiff alleges that Defendants "deprived Plaintiff of his rights, privileges and/or immunities secured by the United States Constitution, which include but are not limited to, violation of the . . . Fourteenth Amendment[] of the United States Constitution, by falsely arresting Plaintiff, by depriving Plaintiff of his physical liberty and property, by causing Plaintiff emotional injury and economic loss by falsely arresting him, by falsely and maliciously prosecuting criminal actions, by unreasonably seizing his person or property, and by depriving Plaintiff of his civil rights." (Am. Compl. ¶ 64.) The crux of Plaintiff's § 1983 claim is that they were arrested and prosecuted without probable cause. Not only does this claim fail because its allegations "amount to nothing more than a 'formulaic recitation of the elements'" of the claim, *Iqbal*, 556 U.S. at 681, it also is not cognizable under the Fourteenth Amendment.

To the extent Plaintiff bases his claim upon an alleged deprivation of his Fourteenth Amendment right to substantive due process, the Supreme Court has said that "where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" [6] *Albright v. Oliver*, 510 U.S. 266,

---

[6] As a preliminary matter, the Court notes that Plaintiff's § 1983 claim alleges violations of both the Fourth and Fourteenth Amendments. (*See* Am. Compl. ¶ 64.) In Section IV.B, the Court recommended dismissal of Plaintiff's § 1983 claim based on the Fourth Amendment. In this Section, the Court addresses the claim to the extent that it is based on the Fourteenth Amendment.

274, (1994) (plurality) (quoting *Graham v. Connor*, 490 U.S. 386, 395, (1989)). When a plaintiff asserts the right to be free from arrest and prosecution without probable cause, "substantive due process, with its 'scarce and open-ended' 'guideposts,' can afford him no relief." *Id.* at 275 (plurality) (internal citation omitted). The Ninth Circuit in *Awabdy* confirmed that "[t]he principle that *Albright* establishes is that no substantive due process right exists under the Fourteenth Amendment to be free from prosecution without probable cause." *Awabdy*, 368 F.3d at 1069 (citing *Albright*, 510 U.S. at 268, 271 (plurality) (further citations omitted)). Thus, Plaintiffs' § 1983 claim based on deprivation of their Fourteenth Amendment rights to substantive due process is subject to dismissal. *See Hazlett v. Dean*, No. CIV 2:12–01782 WBS DAD, 2013 WL 1749924, at *2 (E.D. Cal. Apr. 23, 2013); *Chaffee v. Chiu*, No. C–11–05118–YGR, 2012 WL 1110012, at *6 (N.D. Cal. Apr. 2, 2012) (dismissing "generalized substantive due process claims under the Fourteenth Amendment" where the First and Fourth Amendments were "explicit textual sources of constitutional protection in this action").

**E.    State Law Claims**

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). *See also City of Chicago v. Int'l. College of Surgeons,* 522 U.S. 156, 172 (1997) ("that the terms of § 1367(a) authorize the district courts to exercise supplemental jurisdiction over state law claims . . . does not mean that the jurisdiction must be exercised in all cases").

Although the Court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. *See* 28 U.S.C. § 1367. Here, Plaintiff fails to state a claim for relief on his federal claims under 42 U.S.C. § 1983. The Court generally declines to exercise supplemental jurisdiction over state law claims in the absence of viable federal claims and this case presents no exception. 28 U.S.C. § 1367(c)(3); *Parra v.*

*PacifiCare of Ariz., Inc.*, 715 F.3d 1146, 1156 (9th Cir. 2013); *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001); *see also Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012) (if court declines to exercise supplemental jurisdiction over state law claims once court dismissed federal claims, then the court should dismiss the state law claims without prejudice). Therefore, the undersigned recommends that the Court not exercise jurisdiction over Plaintiffs' state law claims. *See, e.g., Jones*, 2017 WL 3394121, at *6 (declining to exercise jurisdiction in a similar case where the only cause of action brought under federal law was dismissed).

### V.        CONCLUSION AND RECOMMENDATIONS

While leave to amend must be freely given, the Court is not required to permit futile amendments. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992); *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990); *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987); *Klamath–Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983). Here, Plaintiff has failed to cure the deficiencies outlined in the Court's earlier order and, based upon the record and the facts set forth in pleadings filed by Plaintiff, as well as the Court's recent dismissal of an action based on identical claims involving the same events and the same defendants, *Jones*, 2017 WL 3394121, it does not appear the deficiencies of the amended complaint can be cured by amendment. Thus, it appears that granting Plaintiff further leave to amend would be futile. *Lopez v. Smith,* 203 F.3d 1122, 1128 (9th Cir. 2000) (dismissal is proper where it is obvious the plaintiff cannot prevail on the facts alleged and that an opportunity to amend would be futile).

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.      Plaintiff's amended complaint be DISMISSED without leave to amend for failure to state a cognizable federal claim;

2.      The Court DECLINE to exercise supplemental jurisdiction over Plaintiff's state law claims; and

3.      The case be CLOSED.

The Court further DIRECTS the Clerk to send a copy of this order to Plaintiff at his address listed on the docket for this matter.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within twenty-one (21) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**September 19, 2017**__ _____/s/ *Sheila K. Oberto*_____
UNITED STATES MAGISTRATE JUDGE